**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

LESTER L. WASHINGTON                                                                              PLAINTIFF

V.                                                                                                      NO. 3:03cv1206WSu

JACKSON STATE UNIVERSITY, ET AL.                                                      DEFENDANTS


## MEMORANDUM OPINION AND ORDER

Before the court is defendants' Motion for Summary Judgment, filed pursuant to Rule 56(b) and (c)[1] of the Federal Rules of Civil Procedure **[Docket # 66]**.  This court maintains federal question jurisdiction over this case pursuant to Title 28 U.S.C. § 1331.[2]  Plaintiff here is Lester Washington (hereinafter "Washington" or "plaintiff"), who filed this civil lawsuit *pro se.*  Defendants herein are Jackson State University (hereinafter "the University"), the Board of Trustees of State Institutions of Higher Learning (hereinafter "the Board"), Dr. Ronald Mason, Dr. Jeffery Cassisi, Dr. Sheree Watson, Dr. Shih-Sung Wen, Dr. Richard Chiles, Dr. Pamela Banks, Dr. Dollye

---

[1]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[2]Title 28 U.S.C. § 1331 provides in pertinent part that "(a) The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Robinson, Dr. Dorris R. Robinson-Gardner, Dr. Joseph Martin Stevenson, Dr. Debra Buchanan, Dr. Velvelyn Foster, Dr. Reuben Gentry, and Dr. Sidney McLaurin (hereinafter the "Individual Defendants") (collectively "defendants").  In his complaint, plaintiff claims the defendants committed certain acts of discrimination and retaliation against him from August 2001-September 23, 2002 --- by giving him failing grades in three courses, by denying a grievance he filed against Dr. Cassisi, by dismissing him from the University's doctoral program in Clinical Psychology, and by rescinding his acceptance into the doctoral program in Educational Leadership --- all allegedly in violation of Title VI of the Civil Rights Act of 1964.  Plaintiff additionally claims that the defendants denied him due process of law by not permitting him to appear personally before the Clinical Psychology Departmental Grievance Committee and the Graduate Council to present his grievance against Dr. Cassisi.  In their brief in support of the motion for summary judgment, the defendants argue that all of plaintiff's claims are either barred by the appropriate statute of limitations or are not legally cognizable.  Having reviewed the pertinent pleadings, declarations, and documentary evidence and considered the arguments of both parties, this court finds the defendants' motion well-taken and, therefore, grants the defendant's motion for summary judgment.

## **BACKGROUND**

Plaintiff enrolled as a graduate student in the Jackson State University's doctoral program in Clinical Psychology in 2001.  During the Fall 2001 semester, plaintiff took Psychology 501 and 521, two required courses, from Dr. Sheree Watson.  Dr. Watson gave plaintiff a "C" in both courses.  Plaintiff filed a grievance against Dr. Watson on January 9, 2002, because of the "C" grades she had given him.

Over the next several weeks, Dr. Jeffrey Cassisi, Director of the Clinical Training Program, Dr. Pamela Banks, plaintiff's faculty advisor, Dr. Watson, and plaintiff tried to resolve the matter informally.  These discussions led to a compromise in which Dr. Watson agreed to give plaintiff a second chance by withdrawing the "C" grade in Psychology 501 and giving plaintiff an incomplete, or "I" grade instead. Plaintiff then withdrew his grievance and entered into an agreement entitled "Policy for Completion of 'I' in PSY 501."  This agreement required, as a condition of removing the "I" grade, that plaintiff attend Dr. Watson's undergraduate statistics class (Psychology 212), perform extra work at the graduate level, and successfully fulfill the requirements necessary to achieve a "B" in that class.  Plaintiff attended some sessions of the class. He eventually stopped coming.  Consequently, Dr. Watson left the "I" grade on plaintiff's academic record through the Spring and Summer terms of 2002.

During the Spring 2002 semester, plaintiff enrolled in Psychology 617, taught by Dr. Cassisi.  Plaintiff received a "C" in that class.  In May 2002, two faculty committees evaluated plaintiff and gave him a poor evaluation.  They recommended that he be placed on academic probation.  Dr. Dorris Robinson-Gardner, Dean of the Graduate School, accepted the recommendation and placed plaintiff on academic probation.

Plaintiff filed a grievance, with a number of attachments, against Dr. Cassisi on June 21, 2002, claiming that Dr. Cassisi had discriminated against him by giving him a "C" in Psychology 617.  Dr. Wen, Chair of the Department of Psychology, asked the

3

Departmental Grievance Committee to address the grievance. Members of the Committee were: Dr. Richard Chiles, Chair, Dr. Kaye Sly, and Dr. An-Yen Liu.

Dr. Wen sent a memorandum to faculty, staff, and students informing them that plaintiff had filed a grievance against Dr. Cassisi and asking them to support the grievance process by refraining from commenting on the case, including not responding to case related letters or e-mails from either party. Plaintiff contends that this memorandum from Dr. Wen interfered with his ability to obtain witnesses and information on his behalf to submit to the Grievance Committee.

Dr. Chiles asked Dr. Cassisi to submit information regarding his grading procedures, plaintiff's tests and reports, and his evaluations of plaintiff's work. Dr. Cassisi provided the Committee with his course syllabus, his grade book for the course, copies of all homework assignments, plaintiff's tests, reports, and examinations, his evaluations of plaintiff's work, his final grade report to plaintiff, and two detailed letters of explanation in response to questions asked by the Grievance Committee.

The Grievance Committee considered plaintiff's grievance and accompanying documents, as well as statements and documents submitted by Drs. Cassisi and Banks. As permitted by University's Policies and Procedures Handbook for the

Doctoral Program in Clinical Psychology 2002-2003,[3] the Committee did not invite plaintiff, Dr. Cassisi, or anyone else to appear in person before the Committee.

The Committee found no fault with Dr. Cassisi's grading procedures or his treatment of plaintiff. The Committee, therefore, determined that plaintiff's allegations against Dr. Cassisi were unsubstantiated and reported to Department Chair Wen on August 26, 2002, that it found plaintiff's grievance without merit.

On August 3, 2002, plaintiff e-mailed Dr. Watson and asked her what plans she had for changing his grade in Psychology 501 from an "I" back to a "C" or a "B." He reminded her that she needed to get this matter attended to before she left the University to take a teaching position at the University of Southern Mississippi. Shortly thereafter, plaintiff called Dr. Watson and left a message on her answering machine to take the "I" off his record and give him a "C." Dr. Chiles listened to the message with Dr. Watson and heard plaintiff's request regarding the change of his grade. Dr. Watson changed plaintiff's "I" grade to a "C" on the University's computer system and informed plaintiff by letter of what she had done, which Department Chair Wen testified, through declaration, was not inconsistent with University practice. Dr. Wen further noted that plaintiff had received a "C/I" grade, meaning that if no action were taken by the professor, the grade would automatically revert to a "C."

---

[3]The JACKSON STATE UNIVERSITY DOCTORAL PROGRAM IN CLINICAL PSYCHOLOGY POLICIES AND PROCEDURES HANDBOOK 2001-2002 and 2002-2003 sets forth the Program's procedure for student grievances and appeals, and responsibilities of the three-person departmental Grievance Committee. This Committee is charged with evaluating "all information it deems relevant" to a grievance. "The Committee, *at its discretion*, may interview the students or any other party having information pertinent to the review." (emphasis added)

During the Spring 2002 semester, plaintiff applied for admission into the doctoral program in Educational Leadership within the University's School of Education. He took two courses in Education Leadership during the Summer 2002 term and earned "As" in both courses. On July 25, 2002, Dr. Sidney McLaurin, Interim Chair of the Department of Educational Leadership, informed plaintiff that he had been conditionally accepted into the doctoral program in that field. After learning later on, however, that plaintiff had three "Cs" on his academic record, Dr. McLaurin followed University policy and informed plaintiff that since he was on academic probation and had three "Cs" on his record, he could not transfer to the Educational Leadership program.

Plaintiff wrote Dr. Wen on August 17, 2002, and withdrew from the graduate Psychology program. The Graduate Faculty recommended that plaintiff be dismissed from the program on August 20, 2002. Plaintiff officially withdrew from the University on September 26, 2002.

## **SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The party opposing the motion must set forth specific facts showing there is genuine issue for trial. *Id.* at 324. The party may not rest on mere allegations or a bare contention that an issue of fact exists

Id.  The non-movant must produce evidence sufficient for a jury to return a verdict for that party.  This burden is not met by presenting conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

While all legitimate factual inferences must be viewed in the light most favorable to the non-movant, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  F<small>ED</small> R. C<small>IV</small>. P 56(c);  *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Disputes over immaterial facts will not preclude summary judgment.  *St. Amant v. Benoit*, 806 F.2d 1294, 1296 (5th Cir. 1987).

## **PRO SE PLAINTIFFS**

Generally, pro se plaintiffs lack the juridical skills of a legally-trained lawyer in interpreting and applying the procedural and substantive requirements of the legal system.  As a result, the Fifth Circuit has adopted the rule that courts should liberally construct the pleadings of a *pro se* plaintiff.  *Perez v. U.S.*, 312 F.3d 191, 194-95 (5th Cir. 2002).  This court, however, is not required to search for or try to create causes of actions for *pro se* plaintiffs.  *Borninski v. Williamson*, 3:02-cv-1014-L, 2005 WL 1206872, at *9 (N.D. Tex. May 17, 2005).  A liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts.  *See Callahan v.*

*C.I.R.,* Civ. A. 99-0295-C-M1, 2000 WL 1141607, at *1 (M.D.L.A. Apr. 10, 2000). As such, *pro se* plaintiffs are required to know their legal rights and abide by all applicable procedural rules. *Boswell v. Gov. of Texas*, 138 F. Supp.2d 782, 785 (N.D. Tex. 2000). A *pro se* plaintiff's ignorance of or unfamiliarity with court proceedings does not relieve him of this duty. *See Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991).

## ANALYSIS

### A.    The Title VI Claims against the Board and the University

Plaintiff claims defendants violated Title VI of the Civil Rights Act of 1964 in their actions toward him. Title VI provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.[4]

The essential elements of a Title VI claim are (1) there is race or national origin discrimination, and (2) the entity engaged in discrimination is receiving federal financial assistance. *See generally Nat'L Ass'n of Gov't Employees v. Certified Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 706 n.9 (5th Cir. 1994).

The burden of proof in a Title VI case is the same as that for Title VII and other civil rights statutes. See *Baldwin v. Univ. of Texas Med. Branch,* 945 F. Supp. 1022, 1031 (S.D. Tex. 1996) (pronouncing that the burden-shifting analytical inquiry into intentional race discrimination claims is essentially the same for § 1981, § 1983, Title

---

[4]Codified at Title 42 U.S.C. § 2000d (2005).

8

VI, and Title VII).  In the absence of direct evidence of discrimination, the plaintiff may seek to establish a prima facie case with circumstantial evidence utilizing a variation of the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), model.  To establish a prima facie case, a plaintiff must show that he is a member of a protected class, he suffered an adverse action at the hands of defendants in pursuit of his education, he was qualified to continue in pursuit of his education, and he was treated differently from similarly situated students who were not members of his protected class.  *Bell v. Ohio St. Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

Plaintiff is a member of a protected group by virtue of his race — African-American.  He was dismissed from the doctoral program in Psychology by the University.

He has not shown, however, that he was qualified to continue in the program or that he was treated differently than other students with failing grades.  Plaintiff had three "Cs" on his academic transcript at the time of his dismissal.  The academic grade procedures of the Graduate School at the University clearly state that a student can have no more than two "Cs" on his or her academic record and remain in a graduate program.  Plaintiff, then, was not qualified to remain in the Psychology program because of his three "Cs."  Although plaintiff asserted in his Amended Complaint that he was qualified to remain in the program, plaintiff's subjective opinion as to his qualifications is insufficient to create a triable issue.  *See Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1189 (5th Cir. 1997) (holding that plaintiff's subjective opinion, without more, is insufficient to establish a claim of discrimination); *Eaves v. K-Mart Corp.*, 193 F. Supp.2d 887, 893 (S.D. Miss. 2001) (same).

Morever, plaintiff has not established through admissible evidence that similarly situated students outside his protected class were treated more favorably. He testified at deposition that he knew of no student with three "Cs" on his or her academic transcript who had been permitted to remain in the doctoral program in Psychology or any other graduate program at the University. Dr. Robinson-Gardner, Dean of the Graduate School, and Dr. Wen, Chair of the Department of Psychology, state in their Declarations that they know of no student in the graduate program in Psychology who had been permitted to remain in the program with three "Cs" on his or her academic record. Dr. Gardner further stated that she knew of no student with three "Cs" who had been permitted to remain in any graduate program at the University.

Defendants dismissed plaintiff from the doctoral program in Psychology and withdrew his admission to the program in Educational Leadership because he had three "Cs" on his academic record and was no longer qualified to remain in the Graduate School according to University policy. Plaintiff's poor academic performance was the reason for his dismissal. Plaintiff did not submit any admissible evidence that white students were treated differently. Therefore, this court finds that plaintiff's Title VI discrimination claims against the Board and the University are not cognizable as a matter of law.

Likewise, plaintiff's effort to establish a prima facie Title VI retaliation claim fails for lack of causation. He received two unsatisfactory "C" grades from Dr. Watson in December 2001 before he filed his grievance against her. He received a "C" grade from Dr. Cassisi in May 2002 before he filed a grievance against Dr. Cassisi in June 2002. Therefore, plaintiff has failed to establish the causation element of a prima

facie case of retaliation. His Title VI claims of retaliation against the Board and the University are dismissed.

### B. The Title VI Claims against the Individual Defendants

The proper defendant in a Title VI case is an entity receiving federal financial assistance. *See e.g., Shotz v. City of Plantation, Florida*, 244 F.3d 1161, 1171 (11th Cir. 2003) ("[Individuals are not liable under Title VI."); *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996) (dismissing all Title VI claims against individual defendants because they were not "the entity allegedly receiving the financial assistance."). The University and the Board are recipients of federal funds and are appropriate defendants in a Title VI action. On the other hand, the individually named defendants do not receive federal financial assistance and cannot, therefore, be sued in their individual capacity under Title VI. This court dismisses plaintiff's claims as to each of the named defendants in their individual capacities.

### C. The Title VII Claims

Plaintiff has never been an employee of the University, the Board, or of any of the individually named defendants. When plaintiff was a graduate student at the University, he received a graduate assistantship stipend. This stipend was not payment of wages to an employee. Since plaintiff was not an employee of defendants, neither this court nor the Equal Employment Opportunity Commission ("EEOC") has jurisdiction over any Title VII claim he raises. Title 42 U.S.C. § 2000e(f) clearly states, "[t]he term "employee" means an individual employed by an employer." As a graduate student, plaintiff was not an employee of the University.

Even if plaintiff had been an employee of the University, his charge of discrimination with EEOC was not timely filed and was dismised by the administrative agency for that reason. Under Title VII, an individual alleging discrimination must file a complaint with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act. Title 42 U.S.C. § 2005e-5(e)(1) (stating "a charge under this section shall be filed withing one hundred and eighty days after the alleged unlawful empoyment practice occurred . . . . ); *see also Wilson v. West*, 962 F. Supp. 939, 944 (S.D. Miss. 1997); *Harris v. BASF Corp.*, No 03-40684, 2003 WL 22838545, *1 (5th Cir. Nov. 26, 2003). Following "established federal law," the Fifth Circuit has stated that the limitations period begins to run "when the plaintiff knows or reasonably should know that the discriminatory act has occurred." *Merrill v. Southern Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986).

By his own admission, plaintiff stated that he "stopped working for JSU on May 13, 2002." He filed his charge of discrimination on July 23, 2003 – more than one year after his alleged last day of employment. The administrative agency correctly dismissed his charge because it was filed outside the 180-day limitation period prescribed by Title 42 U.S.C. § 2000e-5(e)(1). Because he was not an employee of defendants and because, even if he had been, his charge of discrimination with EEOC was not timely filed, this court dismisses plaintiff's Title VII claim.

**D.    The Due Process Claim**

Plaintiff claims that he was denied procedural due process because he was not invited to appear in person before the Clinical Psychology Departmental Grievance Committee to contest the "C" grade Dr. Cassisi gave him. The University's grievance

policy granted discretion to the Grievance Committee concerning the in-person appearance of witnesses before the Committee. In exercising its discretion, the Committee did not think it would be helpful to have plaintiff appear in person, but rather reviewed his grievance upon the documentation plaintiff, Dr. Cassisi, and Dr. Banks provided. The plaintiff does not dispute that the grievance committee had discretion to call him as a witness in addressing his grievances against Dr. Cassisi. Therefore, plaintiff was not denied procedural due process, because the defendants did not violate the JACKSON STATE UNIVERSITY DOCTORAL PROGRAM IN CLINICAL PSYCHOLOGY POLICIES AND PROCEDURES HANDBOOK 2001-2002 and 2002-2003, which states that the committee shall have discretion in calling witness to its hearings.

Plaintiff additionally alleges that he was denied due process when he was dismissed from the University. The court disagrees. While the general test for a due process violation is whether a plaintiff was properly afforded notice and an opportunity to be heard before an adverse action takes place, *Brown v. Texam A & M Univ.*, 804 F.2d 327, 335 (1986), university students dismissed from poor academic performance are not entitled to a due process hearing.[5] *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 85, (1978), In *Horowitz*, the Supreme Court held that a medical student dismissed from the University for deficiencies in clinical performance had no right to a hearing. The Court said:

> [The graduate student] has been awarded at least as much due process as the Fourteenth Amendment requires. The school fully informed respondent of the faculty's dissatisfaction with her clinical progress and the danger that this posed to timely graduation and continued

---

[5]Due process under the Fourteenth Amendment does require notice and some opportunity for a hearing before a student is expelled from a state university for *disciplinary* reasons. *Than v. Univ. of Texas Medical School at Houston*, 188 F.3d 633 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 1171, 145 L. Ed. 2d 1080 (U.S. 2000).

> enrollment. The ultimate decision to dismiss respondent was careful and deliberate. These procedures were sufficient under the due process clause of the Fourteenth Amendment.

*Id.* Additionally, in *Gaspar v. Bruton*, 513 F.2d 843, 850- 851 (10th Cir. 1975), the Tenth Circuit states that a graduate student "was provided much more due process than that which we hold must be accorded in cases involving academic termination or suspension." *Id.* The court held that school authorities, in order to satisfy due process prior to termination or suspension of a student for deficiencies in meeting minimum academic performance, need only advise that student with respect to such deficiencies in any form. *Id.* All that is required is that the student be made aware prior to termination of his failure or impending failure to meet those standards.

In the instant cases, plaintiff claims that he was denied due process because the University utilized a grievance procedure that did not entitle him to appear before the reviewing committee. Plaintiff's assertion is erroneous. Here, the University advised plaintiff of his academic deficiencies, gave careful and deliberate review of his grievance, and afforded him more due process than he was entitled to under the Fourteenth Amendment. *See Horowitz*, 435 U.S. at 85. The court, therefore, dismisses plaintiff's due process claim.

    **E.**    **The State Law Claims**

Plaintiff also raises various state law claims – defamation, breach of contract, unspecified violations of Title 37 and 72 of the Mississippi Code. As "arms of the State," the defendants hold Eleventh Amendment immunity and sovereign immunity over these claims. *See Richardson v. Southern Univ.*, 118 F.3d 450, 453 (5th Cir. 1997). As such, the defendants cannot be sued in federal court without their consent.

Neither the University, the Board, nor the individual defendants in their official capacities have consented to be sued in federal court, nor have they waived their immunities. While the statute, MISS. CODE ANN. § 11-46-5 (1999 & Supp. 2004), contains a general waiver of Mississippi's sovereign immunity, that waiver is limited to actions brought in the state courts of Mississippi. The statute specifically provides that the State and its entities are not waiving their sovereign immunity or their Eleventh Amendment immunity to suits brought in federal court. *See* MISS. CODE ANN. § 11-46-5(4) (1999 ) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *see also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999) (holding that "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation").

The United States Supreme Court held in *Raygor v. Regents of the University of Minnesota*, 534 U.S. 533 (2002), that federal courts cannot exercise supplemental jurisdiction over state-law claims being pursued by private citizens against non-consenting State entities. *Id.* at 541- 42. That holding was followed in *Boroujerdi v. Mississippi State University*, No. 100CV253, 2002 WL 31992185 (N.D. Miss. Oct. 28, 2002), when the district court held that since defendants had not consented to have plaintiff's state law claims brought in federal court, the court could not exercise supplemental jurisdiction over the state law claims. Id. at *3. Accordingly, the court dismisses the plaintiff's state law claims for lack of jurisdiction.

Plaintiff's state law defamation claim suffers another problem. In his Amended Complaint, plaintiff alleges that Dr. Cassisi wrote and circulated a letter at some point during January 2002 that "slandered" his good name. Plaintiff further alleges in his Amended Complaint that all violations of which he complains "ended when the plaintiff was forced to withdraw from the university and terminate the . . . slander, defamation . . . and other harmful educational practices" of Defendants on September 26, 2002." Plaintiff filed his lawsuit on October 23, 2003 – more than one year later. Plaintiff's defamation claim is time-barred under the Mississippi Code Annotated § 15-1-35 and, thus, is dismissed. *Id.* (2005) (stating that "all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.").

**F.    The FERPA Claim**

Plaintiff contends that defendants violated the Family Education and Privacy Rights Act of 1974 ("FERPA") by permitting Dr. Watson to access plaintiff's education records and change his grade in Psychology 501 from an "I/C" to a "C" in August 2002. Plaintiff's FERPA claim fails because plaintiff has no private right of action to enforce FERPA. The Supreme Court held in *Doe v. Gonzaga*, 536 U.S. 273, 276 (2002), that individuals are not entitled to maintain private causes of action for violation of FERPA. Consequently, plaintiff's FERPA claim is not cognizable and thus, must be dismissed.

**G.    The Claims under Inapplicable Statutes**

Plaintiff attempts to raise a number of claims under federal and state statutes that have no applicability to the instant case. This court, thus, dismisses the following:

plaintiff's claims under the Elliot Larson Civil Rights Act, a State of Michigan statute – codified at MCLA 37.2101, *et. seq.*; his "claim" under Title 42 U.S.C. § 129, Subchapter 1, Div. F. (1-7), which does not exist; his charge under Title 2 U.S.C. §1317(a), which pertains to Congressional Accountability; his claim under Title 42 U.S.C. § 1881a, which creates the National Science Foundation Alan T. Waterman Award; and his allegation under Title 5 U.S.C. §1221(g)(I)(A)(ii), which pertains to civil servants.

### H.  The Section 1981 and 1983 Claims for Money Damages

The Eleventh Amendment to the United States Constitution bars suit against a state by its own citizens, as well as citizens of another state. U.S. CONST. amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 4 (1890). The immunity from suit extends to state agencies, officials, and employees when "the state is the real, substantial party in interest." *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464 (1945). The defendant Board herein is a constitutionally created entity, which has the responsibility of managing and controlling the eight public institutions of higher learning in the State of Mississippi. MISS. CONST. of 1890, art 8, § 213-A (1944). The Mississippi Legislature granted further authority to the Board by statute. MISS. CODE ANN. §§ 37-101-1 – 37-2-2-23 (1972 & Supp. 2004). The constitutional and statutory authority of the Board was recognized by the Mississippi Supreme Court when the Court declared the Board to be "a constitutionally created state agency." *State v. IHL*, 387 So.2d 89, 91 (Miss. 1980). Jackson State University is a public university created by statute and

placed under the auspices of the Board. MISS. CODE ANN. § 27-125-1, *et. seq.* & § 37-101-1 (1999). Both the Board and the University are agencies of the State for Eleventh Amendment purposes. *Jaqnandan v. Miss. St. Univ.*, 373 So.2d 252, 253 (Miss. 1979) (holding that state institutions of higher learning are arms of the state). Therefore, plaintiff's suit against the entity defendant's is barred by the Eleventh Amendment.

The individually named defendants were at all times relevant to this litigation acting in their capacity as officials, employees and agents of the University, a state agency. The Supreme Court has declared that neither a state nor its officials acting in their official capacities are "persons" for purposes of Section 1983 litigation. Therefore, the Eleventh Amendment remains a bar to suits brought against them for money damages under Title 42 U.S.C. § 1983. *Will v. Mich. Dept of St. Police*, 491 U.S. 58, 66 (1989). Accordingly, plaintiff's claims for money damages against the Board, the University, and the individually named defendants in their official capacities are dismissed, in comportment with the holding of *Will*. *E.g., Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991) (finding that state universities are arms of the state and, therefore, entitled to Eleventh Amendment immunity); *McCord v. Maggio*, 927 F.2d 844, 847 (5th Cir. 1991) (holding that suits against state officials in their official capacities are no different than suits against the state).

### I.     Qualified Immunity

Qualified immunity protects public officials from civil liability when performing functions of their jobs unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982).  The Fifth Circuit has held that the "law is considered clearly established if the contours of the right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994).  Public officials who are required to exercise their discretion in performing their jobs also enjoy a qualified immunity defense to Sections 1981 and 1983 actions.  *See Harlow*, 457 U.S. at 818.

It is unclear whether plaintiff sued any of the individually named defendants in their individual rather than official capacities.  However, if plaintiff did sue any of the named defendants in their personal capacities, their qualified immunity affords them protection.

Plaintiff disagrees with the "C" grades assigned to him by Drs. Watson and Cassisi.  He also disagrees with the decision of the Grievance Committee not to invite him to appear in person before the Committee.  In each of these situations, the individual defendants acted within their professional spheres and used discretionary judgment in accord with University policy and procedure.  Drs. Watson and Cassisi assigned plaintiff the grade they each thought he deserved.  Members of the Grievance Committee reviewed plaintiff's grievance against Dr. Cassisi in accord with the Clinical Psychology Departmental Grievance Procedure.  Plaintiff has not submitted any admissible evidence to overcome these defendants' qualified immunity.  Therefore, plaintiff's claims against the individually named defendants in their individual capacities are dismissed.

## CONCLUSION

For these reasons, the court grants defendants summary judgment on plaintiff's Title VI, Title VII, due process, defamation, FERPA, Section 1981 and 1983 claims, and claims brought under miscellaneous inapplicable statutes referred to above. The court grants summary judgment to the individual defendants in their individual capacities under the doctrine of qualified immunity.

All other pending motions are hereby terminated as moot. The court will enter a Final Judgment in accordance with the local rules.

**SO ORDERED** this the 15th day of March, 2006.

s/ HENRY T. WINGATE
CHIEF UNITED STATES DISTRICT JUDGE